## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JOHN BRACKETT**,

     Plaintiff,

v.                                                                Case No. 8:23-cv-1549-WFJ-JSS

**TSE INDUSTRIES, INC.**,

     Defendant.

_____/

## ORDER

Before the Court is Defendant TSE Industries, Inc.'s ("TSE") Motion to Dismiss (Dkt. 29). Plaintiff John Brackett has responded in opposition (Dkt. 34), and TSE has replied (Dkt. 39). Upon careful consideration, the Court grants-in-part and denies-in-part TSE's Motion.

## BACKGROUND

Mr. Brackett is a partially disabled machinist[1] who used to work for TSE. Dkt. 25 at 4. He started as a "Class B Machinist" in December 2019, but was quickly promoted to a "Class A Machinist." *Id.* Unfortunately, in early 2021, "Mr. Brackett suffered flareups of his disabilities and serious health conditions, which were exacerbated by all of the walking that his role as a Class A Machinist required." *Id.*

---

[1] Mr. Bracket "suffers permanent neurological deficit, pain, weakness, numbness, radiculopathy, and lack of range of motion in his left leg" caused by a 2012 industrial accident. Dkt. 25 at 4.

Mr. Brackett subsequently applied for a period of continuous leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq. Id.* at 5. And, on May 13, 2021, he "was certified for intermittent unpaid FMLA leave going forward, to treat and address flareups . . . as they arose." *Id.* Mr. Brackett's treating physician also provided work restrictions aimed at preventing further flareups. *Id.*

At some point thereafter, Mr. Brackett discussed his restrictions with TSE. *Id.* TSE allegedly agreed to accommodate Mr. Brackett's reasonable work restrictions going forward. *Id.* Additionally, at Mr. Brackett's request, TSE moved Mr. Brackett back into a Class B Machinist position with an accompanying pay reduction. *Id.*

Notwithstanding this apparent amenability, Mr. Brackett claims that TSE's response was a facade. Indeed, "Mr. Brackett's TSE Supervisor, Lonnie Ferault, [purportedly] became upset and insisted that Mr. Brackett continue to perform the duties of a Class A Machinist, at the reduced rate of pay and reduced job grade" of a Class B Machinist. *Id.* When Mr. Brackett complained, his "pleas fell on deaf ears." *Id.* at 6. "Mr. Brackett's applications for other positions within TSE[,] which would leverage his expertise without overtaxing his disabled leg[,]" were also denied. *Id.*

On June 24, 2021, Mr. Brackett finally brought his issues to the TSE Human Resources Representative, Toby Fava. *Id.* Mr. Fava supposedly provided no support. Instead, he allegedly "accused Mr. Brackett of 'not being a team player.'" *Id.*

2

"On July 25, 2021, realizing that the discrimination, interference, and retaliation were getting worse rather than better, and that TSE was intentionally refusing to accommodate his disability, Mr. Brackett reluctantly resigned from employment with TSE." *Id.* He then filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Notice of Right to Sue on September 8, 2023. *Id.* at 3–4.

On October 12, 2023, Mr. Bracket filled his Second Amended Complaint against TSE. *Id.* at 1. He asserts six claims: Count I—unlawful interference under the FMLA; Count II—unlawful retaliation under the FMLA; Count III—disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq.*; Count IV—disability discrimination under the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, *et seq.*; Count V—unlawful retaliation under the ADA; and Count VI—unlawful retaliation under the FCRA. *Id.* at 8–16. TSE now moves to dismiss each of these claims with prejudice. Dkt. 29 at 23.

## LEGAL STANDARD

A complaint withstands dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and

viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## DISCUSSION

The Court will assess Mr. Brackett's FMLA, ADA, and FCRA claims in turn.

## I.     FMLA (Counts I & II)

Any eligible employee who takes FMLA leave shall be entitled, upon return from such leave, to be: (A) "restored by the employer to the position of employment held by the employee when the leave commenced;" or (B) "restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). To preserve these rights, as well as the right to leave itself, the FMLA allows for both interference and retaliation claims. *See Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001). Interference claims involve allegations that an employer "denied or otherwise interfered with [an employee's] substantive rights under the

4

[FMLA]." *Id.* Retaliation claims involve allegations that an employer "discriminated against [an employee] because he engaged in activity protected by the [FMLA]." *Id.*

The Court begins with Mr. Brackett's interference claim (Count I). To state a claim of FMLA interference, an employee must demonstrate that "she is entitled to the benefit she claims and that her employer interfered with or denied that benefit." *O'Connor v. PCA Fam. Health Plan, Inc.*, 200 F.3d 1349, 1353 (11th Cir. 2000) (citing *Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 713 (7th Cir.1997)). A plaintiff "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland*, 239 F.3d at 1208. Still, an employer cannot interfere with an FMLA right where there is no notice of FMLA eligibility. *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015).

Despite pleading eligibility and notice, Mr. Brackett fails to assert a viable FMLA interference claim. As Mr. Brackett explains in his Response, the Second Amended Complaint alleges "that [TSE's] refusal to accommodate [Mr. Brackett], even after he was demoted, was an attempt to interfere with and deter him from taking FMLA leave." Dkt. 34 at 5. The problem with this argument is twofold. First, "FMLA leave provisions are wholly distinct from the reasonable accommodation employers are obligated to provide under the [ADA]." *Yoosun Han v. Emory Univ.*, 658 F. App'x 543, 547 (11th Cir. 2016) (internal quotations and citation omitted). TSE consequently had no FMLA-based duty to accommodate Mr. Brackett's work

restrictions. Second, Mr. Brackett fails to indicate any prospective FMLA benefit that TSE might have interfered with or denied by not accommodating him. Indeed, Mr. Brackett nowhere pleads that, when he applied for FMLA leave, TSE denied such leave or refused to restore him to his position after taking such leave. *See generally* Dkt. 25 at 4–8. This is fatal to his claim.[2] An employer cannot deny or interfere with an FMLA benefit that the employee did not pursue or take advantage of. Nor does an employer have an FMLA-based duty to retain an employee until that employee elects to exercise his benefits at some future time. *See Yoosun Han*, 658 F. App'x at 547 ("There is nothing in the FMLA that prevents an employer from terminating an employee who still has leave."). Mr. Brackett must clarify the factual basis of Count I if his interference claim is to survive.

The Court now turns to Mr. Brackett's retaliation claim (Count II). "To succeed on a claim of FMLA retaliation, an employee must demonstrate [that] her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right." *Sutherland v. Glob. Equip. Co.*, 789 F. App'x 156, 160 (11th Cir. 2019). "Because [Mr. Brackett] has put

---

[2] Mr. Brackett's constructive discharge allegations do not change the Court's analysis. Even if Mr. Brackett was constructively discharged due to work conditions which aggravated his disability, it makes little sense to plead that such discharge interfered with his right to FMLA leave where he was certified for FMLA leave that the present record does not show he took or attempted to take. This is tantamount to claiming FMLA interference based on a failure to accommodate ADA protected work restrictions. As the Court explained above, interference claims of this nature are not viable. They instead sound in retaliation because they might evince discrimination based on past engagement in FMLA protected activity—not interference with a prospective FMLA benefit.

forth no direct evidence of retaliation, [the Court] must employ the burden-shifting framework established by the Supreme Court in [*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).]" *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1271 (11th Cir. 2017). Thereunder, to survive a motion to dismiss, Mr. Brackett must demonstrate the following: (1) he engaged in activity protected by the FMLA; (2) he suffered an adverse employment decision; and (3) TSE's adverse decision was causally related to the protected activity. *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010).

Mr. Brackett's FMLA-based retaliation claim is sufficient under this standard. In analyzing the first *McDonnell* factor, the Court reiterates that the Second Amended Complaint is rather unclear concerning whether Mr. Brackett actually took (or applied for) a concrete period of FMLA leave after TSE approved him for general future leave. Mr. Brackett states that, at an unspecified time, he "applied and was approved for a period of continuous FMLA leave." Dkt. 25 at 5. He explains that, "[o]n May 13, 2021, [TSE] certified [him] for intermittent unpaid FMLA leave going forward." *Id.* And, he claims that TSE retaliated against him in multiple ways "for exercising or attempting to exercise his rights under the FMLA" as well as "for applying or attempting to apply for FMLA leave." *Id.* at 9–10. Nowhere, however, does Mr. Brackett actually affirm that he attempted to exercise his right to leave. The Court and TSE should not be left guessing as to this material fact. Notwithstanding,

because TSE does not challenge Mr. Brackett's eligibility for FMLA benefits, Mr. Brackett's request for FMLA certification and unspecified future leave qualifies as FMLA protected activity. *See Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1276 (11th Cir. 2012) (holding that "a pre-eligible request for post-eligible leave is protected activity because the FMLA aims to support both employees in the process of exercising their FMLA rights and employers in planning for the absence of employees on FMLA leave"). The first *McDonnell* factor is therefore satisfied, albeit in this limited way.

The second *McDonnell* factor is satisfied as well. It is widely recognized that constructive discharge qualifies as an adverse employment action under the FMLA. *See Blake v. City of Montgomery, Alabama*, 492 F. Supp. 3d 1292, 1306 (M.D. Ala. 2020), *aff'd sub nom. Blake v. City of Montgomery*, No. 20-14229, 2021 WL 5177429 (11th Cir. Nov. 8, 2021). "The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee if forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is liable for any illegal conduct involved as if it has formally discharged the aggrieved employee." *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975). Here, Mr. Brackett has sufficiently alleged such a discharge. Specifically, Mr. Brackett alleges that, after requesting a demotion entailing lighter responsibilities, TSE vindictively forced him to continue

performing tasks outside his job description—tasks TSE knew were exacerbating Mr. Brackett's disability and diminishing his long-term health. Dkt. 25 at 5–6. When Mr. Brackett complained that he was "medically unable to [continue] performing the duties of a Class A Machinist," he was allegedly ignored and his applications for other positions were denied. *Id.* at 6. Mr. Brackett's plea to Mr. Fava was also purportedly ignored and met with accusations of "not being a team player." *Id.* Accepting these facts as true, as the Court must at this stage, the Court finds that TSE deliberately made Mr. Brackett's working conditions physically intolerable, and that Mr. Brackett's resignation was reasonable. Mr. Brackett was not merely dissatisfied with work assignments or unpleasant working conditions, as TSE suggests. He alleges he was being made to perform debilitating work outside his job description against his requests for reasonable accommodation.

Finally, Mr. Brackett has carried his burden of showing causation. "To establish the causal connection element, a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (internal quotations and citation omitted). To do this, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* (citation omitted). Here, Mr. Brackett has alleged that TSE, Mr. Ferault, and Mr. Fava (the ones responsible for the conditions leading to Mr. Brackett's

constructive discharge) were all on notice of his disability and that their actions were motivated by animus related to his attempts to secure and exercise prospective FMLA rights. This sufficiently evinces causation at the motion to dismiss phase. As it stands, Mr. Brackett has plausibly alleged FMLA-based retaliation.

## II.    ADA (Counts III & V)

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that, at the time of the adverse employment action, he had a disability, he was a qualified individual, and he was subjected to unlawful discrimination because of his disability." *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). "A qualified individual is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at 1267–68 (internal quotations and citations omitted). Further, "[u]nder the plain language of the ADA and the FCRA, an employer's failure to reasonably accommodate an otherwise qualified disabled employee itself constitutes unlawful discrimination, unless the

employer can show undue hardship." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1249 (11th Cir. 2007) (internal quotations and citations omitted).

Mr. Brackett's ADA discrimination claim (Count III) meets this standard. As explained above, Mr. Brackett has plausibly pled a constructive discharge that qualifies as an adverse employment action. There is also no dispute concerning the existence of Mr. Brackett's qualifying disability. The only dispute is whether TSE failed to reasonably accommodate Mr. Brackett. TSE maintains that it not only did so, but "went one step further" by providing the "accommodation of [Mr. Brackett's] choice." Dkt. 29 at 23. The Court nevertheless finds this argument unpersuasive at this stage. While Mr. Brackett concedes that TSE initially accommodated his request to move into a lower job grade, he claims that, once in the position of a Class B Machinist, TSE insisted that he continue to perform the duties of a Class A Machinist for lower pay. This is not accommodation. In the absence of undue hardship, it is opportunistic discrimination, which is further buttressed by Mr. Fava's alleged comments. *See Holly*, 492 F.3d at 1249. Only under a completely uncharitable reading of the Second Amended Complaint could the Court dismiss Count III on the grounds TSE forwards. The Court declines to do so. At this point, all facts in the Second Amended Complaint are accepted as true and viewed in the light most favorable to Mr. Brackett. *Pielage*, 516 F.3d at 1284.

Mr. Brackett's ADA retaliation claim is also sufficient to withstand dismissal under Rule 12(b)(6). Like an FMLA retaliation claim, a plaintiff asserting an ADA retaliation claim must allege the following: (1) he was engaged in statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *See Mecca v. Fla. Health Scis. Ctr. Inc.*, No. 8:12-CV-2561-T-30TBM, 2013 WL 136212, at *3 (M.D. Fla. Jan. 10, 2013) (citing *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999)). "For the purposes of this Motion, [TSE] does not dispute that [Mr. Brackett's] request for an accommodation can be considered a statutorily protected activity." Dkt. 29 at 20. Additionally, also for the purposes of this Motion, the Court has determined that Mr. Brackett suffered an adverse employment action in the form of constructive discharge. It follows that the only ADA retaliation issue is whether a causal connection exists between Mr. Brackett's constructive discharge and his requests for ADA accommodation. That said, on the facts alleged, such a connection clearly exists. TSE, Mr. Ferault, and Mr. Fava were acutely aware of Mr. Brackett's need and requests for accommodations. He was willing to take a lower paying job simply to secure them. Accordingly, Mr. Brackett's ADA protected activities and his constructive discharge were not wholly unrelated. *See Brungart*, 231 F.3d at 799. He has stated a claim for ADA retaliation.

### III.   FCRA (Counts IV &VI)

"[T]he FCRA is to be construed in conformity with the ADA." *Albra v. Advan, Inc.*, 490 F.3d 826, 835 (11th Cir. 2007) (internal quotations and citation omitted). As a result, "[d]isability discrimination claims brought under the FCRA are analyzed under the American with Disabilities Act (ADA) framework." *Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 926 (11th Cir. 2019) (citing *Greenberg v. BellSouth Telecommunications, Inc.*, 498 F.3d 1258, 1263–64 (11th Cir. 2007)). Similarly, FCRA retaliation claims are analyzed under the ADA retaliation framework. *See Martin v. Estero Fire Rescue*, No. 2:13-CV-393-FTM, 2014 WL 2772339, at *4 (M.D. Fla. June 18, 2014). Here, the Court has already found that Mr. Brackett stated viable ADA discrimination and retaliation claims. He has therefore also asserted viable FCRA discrimination (Count IV) and FCRA retaliation (Count VI) claims.

### CONCLUSION

With the exception of Mr. Brackett's FMLA interference claim, the Second Amended Complaint withstands TSE's Motion to Dismiss. Mr. Brackett may have one final opportunity to amend his pleadings if he so wishes. Any amendment is due in twenty-one days.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1)  TSE's Motion to Dismiss (Dkt. 29) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

(2) Count I is **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** at Tampa, Florida, on December 20, 2023.

*/s/ William F. Jung*

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

<u>**COPIES FURNISHED TO**</u>:
Counsel of Record

14